Jenny Lynn **ANDERSON** and Mark Anderson, Plaintiffs,

v.

**RADISSON HOTEL CORPORATION,** Defendant.

No. CV692–047.

United States District Court,
S.D. Georgia,
Statesboro Division.

June 21, 1993.

Stanley H. Friedman, Friedman, Donalson & Phillips, Savannah, GA, C. Frederick Overby, Peter J. Daughtery, Butler, Wooten, Overby & Cheeley, Columbus, GA, James E. Butler, Jr., Butler, Wooten, Overby & Cheeley, Atlanta, GA, for plaintiffs.

Kent T. Stair, Robert W. Browning, Webb, Carlock, Copeland, Semler & Stair, Atlanta, GA, for defendant.

### ORDER

BOWEN, District Judge.

Defendant Radisson Hotel Corporation filed a motion for summary judgment in the above-captioned matter. For the reasons stated below, the motion is denied.

## I. BACKGROUND

This diversity action arises out of an alleged incident at the Radisson Hotel located in downtown Atlanta, Georgia. Plaintiffs claim that Ms. Anderson, a resident of Statesboro, Georgia, was an out-of-town guest at the hotel on November 28, 1990, and that she was attacked on that date in a hotel corridor—and thereafter in her room—by an assailant unknown to her. (Amend. Compl. at 2–4.) Plaintiffs allege that Defendant Radisson Hotel Corporation (Radisson) operated the hotel, was aware of previous criminal activity on the premises, tortiously failed to warn Ms. Anderson of the danger of criminal activity, failed to provide adequate security on the premises, and negligently provided security. (Id.) Ms. Anderson seeks compensatory damages for pain and suffering, special damages for costs of medical treatment, as well as lost income and lost earning capacity. The Co–Plaintiff, Ms. Anderson's husband, seeks damages for loss of consortium, companionship, and services of his spouse. Plaintiffs seek punitive damages as well.

## II. ANALYSIS

### A. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case ..., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark*, 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden

shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark*, 929 F.2d at 609 n. 9.[1]

### B. Defendant's Arguments for Summary Judgment

Plaintiffs' Amended Complaint sets forth claims for damages founded upon Defendant's alleged failure to provide adequate security at the hotel, negligent provision of security, and failure to warn Ms. Anderson of the danger of criminal activity. Under Georgia tort law, the requisite elements of a negligence claim include duty, breach, causation, and actual loss or damage. *Lau's Corp., Inc. v. Haskins*, 261 Ga. 491, 405 S.E.2d 474,

476 (1991). Plaintiffs will bear the burden of proof on each of these elements at trial.

1. *Defendant's General Argument.* In support of the motion for summary judgment, Defendant's first argument reviews the requisite elements of a negligence claim and then states generally that Plaintiffs "have failed to set forth evidence to support" those elements. (Br.Supp.Def.'s Mot.Sum.Jud. at 4–5.) Relying upon *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), Defendant asserts that "it ... has successfully met its burden by pointing out an absence of evidence on the record to support at least one essential element of every claim in plaintiffs' Complaint." (Br.Supp.Def.'s Mot.Sum.Jud. at 6.)

Defendant is mistaken, and blurs the distinction between the burden of proof at trial and the burdens of production at summary judgment. *See Clark*, 929 F.2d at 606–608. Although *Celotex* stands for the proposition that under certain circumstances a summary judgment movant may carry its burden without presenting evidence negating an element of the other party's claim, merely asserting that the non-moving party has not come forward with evidence to support its claim is *not* enough. *See Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555 (White, J., concurring). To repeat: the movant must first *demonstrate* that the non-moving party *cannot* carry its burden of proof *at trial.* *Clark*, 929 F.2d at 607–608.

This distinction between not placing proof in the record and not being able to offer proof at trial is crucial. As Justice White emphasized in *Celotex*:

> A plaintiff need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery Rules or by court order. Of course, he must respond if required to do so; but he need not also depose his own witnesses or obtain their affidavits to defeat a motion for summary judgment asserting only that

---

1. Subsequent to filing the motion for summary judgment, Defendant filed a motion to strike and a notice of objections, both directed against certain evidentiary materials offered by Plaintiff in response to the summary judgment motion. The motion to strike was denied as procedurally im-

proper, (Order April 16, 1993), but the arguments contained therein shall also be considered as objections, and the Court's ruling upon all objections will be implicit—if not explicit—in the ruling on the motion for summary judgment.

he has failed to produce any support for his case.

*Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555 (White, J., concurring). In *Celotex*, the movant noted that the plaintiff had failed to identify, *in answering interrogatories specifically requesting such information*, any witnesses whose testimony could establish an essential element of her claim. *Celotex*, 477 U.S. at 320, 106 S.Ct. at 2551. In sum, the movant had asked the clinching question in discovery, received a favorable answer, and pointed out the plaintiff's implicit admission to the Court. The movant thus demonstrated that the plaintiff could not meet her burden of proof at trial.[2]

■■■■ In the case sub judice, Defendant's general argument does not make the requisite demonstration—nor does it offer to do so. "It is not enough to move for summary judgment ... with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555 (White, J., concurring); *see also Four Parcels of Real Property*, 941 F.2d at 1438 n. 19; *Clark*, 929 F.2d at 608. Although Defendant makes general references in the motion (and in a request for filing and a notice of filing) to various discovery materials, (*See* Def.'s Mot.Sum.Jud. at 2; Def.'s Req.Filing Orig.Dis.Mat. at 1–2; Def.'s Not.Filing Orig.Disc., Jan. 28, 1993), Defendant does not bother to review any of the evidence for the Court in an attempt to demonstrate that Plaintiffs will not be able to carry their burden of proof at trial. (*See* Br.Supp.Def.'s Mot.Sum.Jud. at 3–6; *see also* Def.'s Reply Pl.'s Resp. at 14–15.)[3] If this meager "effort" were deemed to carry the movant's initial burden, then that "burden" would in truth be no burden at all, and summary judgment would be reduced to nothing more than a tool for smoking out the trial strategy of the opposing party. *See Celotex*, 477 U.S. at 332, 106 S.Ct. at 2557 (Brennan, J., dissenting).[4] Accordingly, Radisson has not carried its burden with the argument aimed generally at all the elements of Plaintiffs' claims. Plaintiffs have no burden to come forward with evidence in response to the conclusory assertion.

2. *Defendant's Particular Arguments.* Defendant presents other arguments against particular individual elements of Plaintiffs' claims. Some of these merely repeat the conclusory "no evidence" assertion contained in the general argument. These attempts fail as well, and there is no need for further discussion of them.

In addition, however, Defendant presents arguments containing more substantive attacks on the individual elements of Plaintiffs' claims. The Court now turns to examine these elements and arguments.

---

2. In *Celotex*, the plaintiff sued various asbestos manufacturers, alleging that her husband's death resulted from exposure to products containing asbestos. In support of its motion for summary judgment, defendant Celotex noted that the plaintiff "had failed to identify, in answering interrogatories specifically requesting such information, any witnesses who could testify about the decedent's exposure to [Celotex's] asbestos products." *Celotex*, 477 U.S. at 320, 106 S.Ct. at 2551.

Although *Celotex* has not been expressly limited to its facts, the Eleventh Circuit emphasized in *Clark* that *Celotex* presented the "unusual situation" where "neither party could prove either the affirmative or the negative of an essential element of the [plaintiff's] claim...." *Clark*, 929 F.2d at 607. The *Clark* opinion indicated that the *Celotex* method of carrying the movant's initial burden at summary judgment will succeed in "uncommon" situations only. *See id.* at 608; *see also Four Parcels of Real Property*, 941 F.2d at 1438 n. 19.

3. Furthermore, it is the *movant's* responsibility—not the Court's—to search the record and identify those portions which support the motion for summary judgment. *Clark*, 929 F.2d at 609. The discovery materials cited generally in the motion, request for filing, and notice of filing collectively total thousands of pages; the argument does not point to any particular one or more of the items—much less any portion thereof—in support. (*See* Br.Supp.Def.'s Mot.Sum. Jud. at 3–6; *see also* Def.'s Reply Pl.'s Resp. at 14–15.) This hardly suffices for the required identification; gesturing toward a forest is not the same as blazing a trail through it that others may follow. The Court does not ask for a swept path with bread crumbs strewn along every inch, but does insist on a marked tree now and then.

4. It is instructive to note that Justice Brennan agreed with the *Celotex* majority's analysis of the standard for summary judgment. He dissented because he disagreed with the majority's application of the law to the facts of the case. *Celotex*, 477 U.S. at 329, 334, 106 S.Ct. at 2555, 2558 (Brennan, J., dissenting).

■ (a) Duty and Breach. As a basic principle of Georgia tort law, " '[i]f there is no duty, there can be no negligence. If the defendant owes a duty, but does not owe it to the plaintiff, the action will not lie.' " *Atlanta & Charlotte Air–Line Ry. Co. v. Gravitt,* 93 Ga. 369, 20 S.E. 550 (1894) (citation omitted).

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

O.C.G.A. § 51–3–1. "The proprietor is not the insurer of the invitee's safety, ... but is bound to exercise ordinary care to protect the invitee from unreasonable risks of harm of which [the proprietor] has superior knowledge." *Lau's Corp., Inc. v. Haskins,* 261 Ga. 491, 405 S.E.2d 474, 476 (1991) (citations omitted).

■ (i). Inadequate and Negligently Provided Security. Plaintiffs claim that "[t]he security provided [in] the corridors of ... Defendant's hotel was not adequate and was negligently provided." (Amend.Compl. at 4.) As a matter of law, a proprietor's duty of ordinary care toward its invitees does not normally include taking measures to protect them against the intervening criminal acts of third parties, because such acts are usually unforeseeable. *See Atlanta Center Ltd. v. Cox,* 178 Ga.App. 184, 341 S.E.2d 15, 16 (1986). A duty to take security measures against the risk of criminal acts of third parties *does* arise if the proprietor is put on notice, by substantially similar past incidents, "that his patrons were subject to the risk of criminal assault...." *Grandma's Biscuits, Inc. v. Baisden,* 192 Ga.App. 816, 386 S.E.2d 415, 416 (1989).

■ Defendant argues that it had no duty to take security measures against the

risk of the harm to Ms. Anderson in this case, because Defendant was not on notice of substantially similar past crimes. (Br.Supp.Def.'s Mot.Sum.Jud. at 9–14.) Defendant requested that Plaintiffs file "all discovery documents in plaintiffs' possession which relate to any alleged criminal incidents occurring at defendant's hotel prior to the plaintiffs['] incident, which incidents the plaintiffs[ ] claim to be 'substantially similar' to the plaintiffs['] incident." (Def.'s Req.Filing Orig.Disc.Mat. at 1). Defendant points to the police and hotel incident reports filed by Plaintiff and argues that all will be inadmissible at trial, because the reports themselves were not made by persons having personal knowledge of the incidents, and the suppliers of the information contained in the reports were not acting in the normal course of business (and thus the reports do not fall within the business records exception to the rule against hearsay, Fed.R.Evid. 803(6)). (Br.Supp.Def.'s Not.Obj. at 17–23, 23.)[5]

Defendant is correct insofar as the incident reports are intended as evidence of the *truth* of the facts stated in the reports. *See* Michael H. Graham, *Federal Practice & Procedure* § 6757, at 641–42 & n. 28 (Interim ed. 1992) (discussing inadmissibility of business record when supplier of information does not act in regular course of business). In this case, however, Plaintiffs intend to introduce the reports to show that Radisson had *notice* of a prior incident on the premises. For this purpose, the reports are admissible under Fed.R.Evid. 803(6). *See id.* § 6757, at 643 n. 30 (stating "Rule 803(6) extends ... to the point of including the statement of the occurrence witness for the fact said but not as proof of the truth of the facts stated.").[6]

Defendant argues that the various police incident reports filed by Plaintiffs are irrelevant because neither the reports nor the accompanying affidavit show that the alleged incidents were actually brought to Radisson's

---

**5.** Defendant stipulated in deposition that the hotel reports themselves were kept in the normal course of business, and the officer's affidavit accompanying the police reports contained a similar statement.

**6.** Defendant argues condescendingly that this result could lead to the absurd situation where an

inebriated patron's report of an assault by a "space alien" would be admissible as evidence that Radisson was on notice of assaults by spacemen at the hotel. (Br.Supp.Def.'s Notice Obj. at 21–2.) Even in argument, hyperbole erodes credibility.

attention. (Br.Supp.Def.'s Mot.Strike at 6–7.) The Court is not willing to rule the evidence inadmissable at this stage, however; Plaintiffs should have the opportunity to explore the matter at trial—although perhaps initially as an offer of proof without the presence of the jury. In any event, a limiting instruction to the jury will suffice if necessary.

■ Radisson further argues that the incidents recounted in the police and hotel reports are not, as a matter of law, "substantially similar" to the attack on Ms. Anderson. (Br.Supp.Def.'s Mot.Strike at . 7, 10–11.) "Whether a 'substantial similarity' exists must be determined by the facts of each individual case. It is not required that the offenses be identical." *MARTA v. Allen,* 188 Ga.App. 902, 374 S.E.2d 761, 763 (1988). "Substantial similarity" *does* require, however, that the incidents "(1) occur at comparable locations, (2) occur under similar physical circumstances and conditions, (3) be of a similar type, and (4) not be too remote in time." *Burnett v. Stagner Hotel Courts, Inc.,* 821 F.Supp. 678, 683 (N.D.Ga.1993) (footnotes omitted); *see Washington Rd. Prop., Inc. v. Stark,* 178 Ga.App. 180, 342 S.E.2d 327, 328 (1986) (location); *McCoy v. Gay,* 165 Ga.App. 590, 302 S.E.2d 130, 132 (1983) (physical circumstances and conditions); *Savannah College of Art & Design, Inc. v. Roe,* 261 Ga. 764, 409 S.E.2d 848, 850 (1991) (type of crime); *Nalle v. Quality Inn, Inc.,* 183 Ga.App. 119, 358 S.E.2d 281, 283 (1987) (Beasley, J., concurring) (time between incidents).

Radisson reviews the facts presented in a few individual incident reports. (*See* Def.'s Reply Pl.'s Resp. at 6; Br.Supp.Def.'s Mot. Strike at 11–13, 14.) One such report is of an alleged rape of a hotel guest; Radisson shows that this report fails the substantial similarity test, for on its face the report reveals that no crime actually occurred. An-

other report discussed by Radisson is one of an assault which occurred in a parking lot; Radisson shows that this incident is not substantially similar because it did not occur at a location comparable to the assault on Ms. Anderson in the hotel corridor outside her room. Radisson addresses also a report of a criminal trespass by a non-guest who entered the property and used the hotel sauna; Radisson shows that this trespass incident is not a crime similar in type to the assault on Ms. Anderson.

Nevertheless, there remain in the record numerous other incident reports which Radisson does not specifically identify and review for the Court. Instead, Radisson merely makes a blanket, conclusory assertion that they, too, are not substantially similar to the incident involving Ms. Anderson. Defendant asserts that "the Court. should remember that it is the plaintiffs' duty to meet this [substantial similarity] test, and not the duty of the defendant or the Court." (Br.Supp.Def.'s Mot.Strike at 13.) True, the burden of proof *at trial* will be on the Plaintiffs. The initial burden of demonstration at summary judgment, however, is on the movant.[7] While Defendant will have the opportunity to object at trial when Plaintiffs offer a particular document as evidence of notice, this Court will not make the requisite demonstration for Defendant on a motion for summary judgment. Defendant has failed here to demonstrate that Plaintiffs will not be able to carry their burden of proof on the duty element.

■ Furthermore, without regard to the "notice" issue, if a proprietor voluntarily undertakes security measures for the benefit of its patrons, then—although the standard of care is not heightened and additional security measures are not necessarily required— the proprietor *is* required to perform the undertaking in a non-negligent manner. *Lau's,* 405 S.E.2d at 478 & n. 2. According-

---

7. Ironically, Defendant chastises Plaintiffs for their "profound misunderstanding" of the parties' respective burdens at summary judgment. (Br.Supp.Def.'s Notice Obj. at 34.) Radisson asserts that "it is not the duty of this defendant ... to spend endless hours plowing through the plaintiffs' stacks of irrelevant 'evidence' and then to specifically show why every piece of the plain-

tiffs' evidence is irrelevant or immaterial." (*Id.* at 36.) If Radisson seeks to carry its initial burden on motion for summary judgment by arguing that all the evidence on a crucial element of Plaintiffs' claim is inadmissible, then it most certainly *is* Radisson's duty to "plow through" the evidence and make the requisite demonstration. *See Clark,* 929 F.2d at 608.

ly, the proprietor may be held liable if, in performing the voluntary undertaking, it "acts unreasonably or makes the situation worse, by increasing the danger, or by misleading the plaintiff into belief that [the danger] has been removed, or by depriving the plaintiff of the possibility of help from other sources, etc." *Id.* at 478 n. 2.

■ Defendant argues that there was no breach of duty toward Ms. Anderson because Defendant did in fact exercise ordinary care in keeping the premises safe. (Br.Supp.Def.'s Motion for Sum.Jud. at 7–9.) Defendant specifically points to portions of the affidavit of Gary M. Scott, director of hotel security at the time of the alleged incident. Radisson argues that the affidavit shows "defendant provided extensive security measures" and "defendant's security measures were both reasonable and appropriate." (*Id.* at 8–9.) The affidavit lists several specific "security procedures and precautions" in effect at the hotel on the night of the alleged incident. (Scott Aff. ¶ 11.)

By pointing to the Scott affidavit, Defendant does what it ought not to have done and leaves undone that which it ought to have done.[8] The Scott affidavit indicates Radisson voluntarily undertook measures to protect its invitees against crime on the premises. The Scott affidavit does not, however, establish that the undertaking was performed in a non-negligent manner. "[E]ven when there is no dispute as to the facts, it usually is for the jury to decide whether the conduct in question meets the reasonable man standard; accordingly, courts have denied motions for summary judgment on issues of negligence...." 10A Charles A. Wright et al., *Federal Practice & Procedure* § 2729, at 217 (2d ed. 1983). Viewing the Scott affidavit in the light most favorable to the non-moving party, the Court cannot conclude that the affidavit negates the breach element of Plaintiffs' claim for negligently provided security. Defendant has failed to carry its burden on this point, and the issue must be resolved at trial.

■ (ii). Failure–to–Warn. Plaintiffs also claim that "Defendant specifically failed to provide any warning to [Ms. Anderson] ..., despite knowledge of the dangerousness of the premises and despite specific actual knowledge of the criminal activity on the date Ms. Anderson was a paying customer." (Amend.Compl. at 3.) As a matter of law, a proprietor has no duty to warn invitees of a *generalized* risk of crime. *Lau's*, 405 S.E.2d at 477. Defendant argues that the rule enunciated in *Lau's* precludes any recovery by Plaintiffs on the failure-to-warn claim in this case. (Br.Supp.Def.'s Mot.Sum.Jud. at 6.) To the extent that Plaintiffs' claims are founded upon a generalized risk of crime, Defendant is correct.

■ *Lau's* acknowledged, however, that "[m]any circumstances may require a [proprietor] to warn the invitee of latent dangers" of which the proprietor had notice. *Lau's*, 405 S.E.2d at 477. Plaintiffs' Amended Complaint specifically alleges that "Defendant knew that there was criminal activity on the premises ... earlier in the day on November 28, 1990," (Amend.Compl. at 2), and charges Defendant with misconduct in failing to warn Ms. Anderson "despite *specific actual knowledge of criminal activity on the date Mrs. Anderson was a paying customer*," (*id.* at 3 (emphasis added).) Thus, the failure-to-warn claim in this case is directed (at least in part) against a *specific* latent danger, not merely a generalized risk of crime. To that extent, the failure-to-warn claim falls outside the scope of the rule of *Lau's*.

Radisson argues that "the hotel staff was completely unaware of any specific danger posed by the presence of the unknown assailant" who confronted Ms. Anderson. (Def.'s Reply Pl.'s Resp. at 21.) Defendant presents the Scott affidavit, (*id.* at 4–5), which states "hotel security and the other hotel employees received no notice or warning of any alleged criminal activity occurring on November 28, 1990 and relating to sexual assaults or physical assaults against any persons on the hotel premises." (Scott. Aff. ¶ 7.) The affidavit further states that at approximately 5:38 p.m. on November 28, 1990, hotel security received notice of a breaking and entering in a guest room. (*Id.* ¶ 8.) According to the

affidavit, "[hotel] security conducted a search of the hotel premises but no individual matching the description provided to security was found to be on the premises." (*Id.*) A hotel incident report accompanies the affidavit.

Radisson's attempt to distinguish the latent danger posed by this prior incident from that which gave rise to the incident involving Ms. Anderson is to no avail. The evidence shows that Radisson had notice of criminal activity involving the use of force, by a perpetrator in a hotel corridor, to gain entrance to a hotel room less than three hours prior to the incident involving Ms. Anderson. The evidence further shows that the perpetrator remained at large. Viewing the evidence in the light most favorable to the non-moving parties, the Court concludes that the Scott affidavit and accompanying incident report do not negate the "knowledge of a latent danger" element of Plaintiffs' failure-to-warn claim.

■ (b) Causation. " '[A]n injured person seeking to impose liability upon another for the negligent performance of a voluntary undertaking must show either detrimental reliance [upon the undertaking] or an increased risk of harm [arising from the undertaking]....' " *Grandma's Biscuits,* 386 S.E.2d at 417 (citation omitted). Plaintiffs' Amended Complaint can be construed reasonably as setting forth a claim for negligently provided security, founded upon detrimental reliance. (*See* Amend.Compl. at 3.) Therefore, at trial, Plaintiffs will bear the burden of proving that Ms. Anderson was aware of Radisson's security undertakings and that she relied upon those undertakings. *See Grandma's Biscuits,* 386 S.E.2d at 417.

Defendant points to Ms. Anderson's deposition, in which she stated that she never noticed anything about security at the Radisson Hotel and never really gave any thought to security there on previous job-related or recreational visits to the premises during a period when she lived and worked in the Atlanta area. (Def.'s Reply Pl.'s Resp. at 23; *see also* Br.Supp.Def.'s Mot.Strike at 6 (citing Dep. J.L. Anderson at 42).) This carries the movant's initial burden, for it appears to demonstrate that Plaintiffs will not be able to prove at trial that Ms. Anderson was aware of Radisson's security undertakings. Without awareness, presumably, there could be no reliance.

Nevertheless, Plaintiffs have submitted Ms. Anderson's affidavit, in which she states:

When I traveled alone ..., I selected hotels for numerous reasons, one of which was because of what I perceived to be a more safe and secure environment because of the presence of security personnel and devices....

*When checking into the Radisson in downtown Atlanta in November of 1990 as a guest,* I expected and *relied* upon the Radisson to provide a safe and secure environment through *their security personnel and devices.*

(Aff. J.L. Anderson at 1–2 (emphasis added).)

■ Radisson argues that this affidavit is a "sham" which must be disregarded for purposes of summary judgment. (*See* Br.Supp.Def.'s Mot.Strike at 6.) In this circuit, an affidavit is considered a "sham" *only* " 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.' " *Tippens v. Celotex Corp.,* 805 F.2d 949, 954 (11th Cir. 1986) (quoting *Van T. Junkins & Assocs. v. U.S. Industries,* 736 F.2d 656, 657 (11th Cir. 1984)) ("sham affidavit" rule). Otherwise, "[v]ariations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all." *Id.* Such issues of credibility and weight are for a jury to decide. *Id.*

■ In this case, Ms. Anderson's affidavit is not a "sham" to be disregarded, nor is the affidavit inherently inconsistent with her deposition. *See id.* at 954–55. The affidavit distinguishes what Ms. Anderson relied upon *when she checked into the Radisson* from what she did or did not notice about security at the Radisson on her previous visits when she did not check in. Although Ms.

Anderson's affidavit does not indicate what particular security undertakings she was aware of when she checked into the hotel, it does raise a genuine issue of material fact to be resolved at trial.

■■■ (c) Damages. Plaintiffs in this case seek not only compensatory damages but also punitive damages. Punitive damages cannot be imposed without a finding, based on clear and convincing evidence, of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51–12–5.1(b) (Supp.1992). Even when punitive damages are warranted, they are limited to a maximum of $250,000.00, unless the defendant is found to have acted—or failed to act—with the specific intent to cause harm. *Id.* § 51–12–5.1(f), (g).

Defendant seeks to place the statutory cap on any potential punitive damages award in this case by pointing to portions of the Scott affidavit in an attempt to negate the "specific intent" element of uncapped punitive damages. (Br.Supp.Def.'s Mot.Sum.Jud. at 20.) Radisson argues that Scott's testimony "affirmatively establishes that this defendant did not act with specific intent to cause harm to Mrs. Anderson at any relevant time." (*Id.*) The Scott affidavit states that "[a]t no relevant time on the date of the plaintiffs' incident or any other time did the hotel security or any other hotel employees act with any specific intent to cause harm to the plaintiffs as alleged in the complaint." (Scott Aff. ¶ 6.)

A question of "intent" is a question regarding state of mind. As the former Fifth Circuit observed in an analogous context,

> [State of mind] on the part of the company can be proved only by showing the state of mind of its employees. The court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind. Much depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances the jury should be given an oppor-

tunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue.

*Croley v. Matson Navigation Co.,* 434 F.2d 73, 77 (5th Cir.1970)[9] (emphasis added). "Inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable men might differ—a function traditionally left to the jury—summary judgment often will be an inappropriate means of resolving an issue of this character." 10A Charles A. Wright et al., *Federal Practice & Procedure* § 2730, at 238 (2d ed. 1983).

In this instance, the Court is faced with an affidavit of one person testifying not only as to his own state of mind but also the states of minds of other persons. Viewing the Scott affidavit in the light most favorable to the non-moving parties, the Court cannot conclude that the affidavit negates the intent element of Plaintiffs' claim for uncapped punitive damages. Once again, the movant has failed to carry its initial burden.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby **DENIED.**

---

9. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.